RECEIVED

MAY 29 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ERICA P. BORILL | CIVIL ACTION NO. 6:11CV1492 |
| VERSUS | JUDGE DOHERTY |
| CENTENNIAL WIRELESS, INC. | MAGISTRATE JUDGE HANNA |

## RULING

Currently pending before the Court is plaintiff's motion in limine to exclude the reports and testimony of Fred Vanderbrook, Jr., Digital Forensics Solutions, and Digital Assembly. [Doc. 85] At a telephone conference held April 3, 2013, the foregoing motion was denied in part, granted in part, and deferred in part. [Doc. 99] More specifically, the motion was denied to the extent plaintiff sought to exclude the entire testimony as reflected in the report of Digital Assembly at trial; the motion was denied to the extent plaintiff sought to exclude all testimony as reflected in the report of Digital Forensic Solutions at trial, insofar as the foregoing relates to chain of custody, and granted to the extent plaintiff sought exclusion of the testimony of Digital Forensic Solutions as reflected in the report, insofar as the testimony goes beyond chain of custody; and finally, with regard to the testimony of Fred Vanderbrook as reflected in his report, the motion was denied to the extent plaintiff sought to exclude conclusions numbered 1 - 5 of Mr. Vanderbrook's original report, deferred with regard to conclusion no. 6 of that same report, and deferred with regard to conclusions numbered 2 - 6 of Mr. Vanderbrook's supplemental report. [*See* Doc. 99] And, as previously noted, as to the report itself, rather than proposed testimony, the Federal Rules of Civil Procedure and Evidence, will, of course, govern.

The specific conclusions of Mr. Vanderbrook upon which the Court deferred ruling are as follows:

> 6. This accident almost certainly resulted from the failure of Ms. Borill to properly assess her path of travel. [Doc. 85-8, p.3]
>
> 2. The wear pattern on the front toe of the right flip flop indicates the likelihood of toe dragging on the right side which has caused wear to the toe of the shoe over an extended period of time. [Doc. 85-9, p.2]
>
> 3. This toe dragging was not the result of a single incident such as may have occurred at the edge of carpet or carpet strip. [Id.]
>
> 4. Toe dragging can possibly be related to spontaneous trips regardless of any additional obstacle. [Id.]

With regard to the admissibility of the conclusions listed above, supplemental briefing was ordered. The Court has now received the supplemental briefing. Following a review of the foregoing briefing, as well as the original briefing and exhibits submitted in connection therewith, the Court now issues its Ruling.

Rule 702 of the Federal Rules of Evidence provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell*

2

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *see also Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "To determine whether proffered testimony is reliable, the trial court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Brown v. Illinois Central Railroad Company*, 705 F.3d 531, 535 (5th Cir. 2013) (quoting *Daubert* at 592-93); *see also* Fed.R.Evid. 104(a). "To establish reliability under *Daubert*, an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology.'" *Brown* at 536 (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "'The expert's assurances that he has utilized generally accepted [principles] is insufficient.'" *Id.* (quoting *Moore* at 276).

The Supreme Court's *Daubert* opinion lists several factors a trial court may use to determine an expert's reliability: the extent to which the expert's theory can be or has been tested; whether the theory has been subjected to peer review and publication; any known or potential rate of error; the existence and maintenance of standards governing operation of the technique; and whether the method or theory has been generally accepted in the relevant scientific community. *Daubert*, 509 U.S. 593-95; *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).[1] Although there is no prescribed test a court must apply to determine an expert's reliability, "the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway* at 318. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *see also Hathaway* at 318. The

---

[1] "These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Hathaway*, 507 F.3d at 318 (citing *Black v. Food Lion* 171 F.3d 308, 311-12 (5th Cir. 1999).

burden of proof for admissibility rests upon the proponent of the expert testimony. *Moore* at 276.

Mr. Vanderbrook is a mechanical engineer by trade. [Doc. 85-10, p.11] He arrived at his conclusions in this matter after conducting an inspection of the, *then existing*, alleged accident location[2], speaking with *one employee* of the store at which plaintiff's accident occurred, reviewing the petition filed by plaintiff, reviewing depositions of plaintiff and various witnesses to the accident, and reviewing photographs of the accident location. [Docs. 85-8, p.; 85-10, p. 11]

The Court will first address Mr. Vanderbrook's conclusion, contained in his original report, that "[t]his accident almost certainly resulted from the failure of Ms. Borill to properly assess her path of travel." In his report, Mr. Vanderbrook first finds the entry area where plaintiff claims she fell was neither defective nor presented an unreasonable risk of harm. Mr. Vanderbrook appears to have arrived at this conclusion primarily, by examining two undated photographs provided by defendants.[3] Alternatively, if plaintiff fell on an open expanse of carpet in a different area of the store as defendants claim, then Mr. Vanderbrook finds plaintiff's "choice of flip-flop shoes may likely have contributed to the cause of this accident." [Doc. 85-8, p.3] When asked at his deposition to describe the specific "engineering steps" that led him to the conclusion that the accident "almost certainly resulted from the failure of Ms. Borill to properly assess her path of travel," Mr.

---

[2]At the time of Mr. Vanderbrook's inspection, the store had been remodeled, and thus, was no longer in the same condition as it existed on the day of the accident.

[3]Specifically, the report provides as follows:

> The interior mat/landing platform appear [sic] to be in good condition in both photographs, and although we could not determine the thickness of the plywood platform, there appears to be a rounded rubber molding around the perimeter. Also, the mat itself appears to have a rubber backing and was embossed with the name, "Centennial Wireless." In all photographs, the platform/mat contrasted in color with the dark gray flooring and was easily visible, especially with the black rubber nosing around the platform and the black rubber backing for the mat.

[Doc. 85-8, p.2]

Vanderbrook responded: "Well, since I didn't believe there were any defective conditions which got in between her and where she was sitting and the place that she wound up, the only logical conclusion, then, is that she was - - she was step - - walking on a straight and level piece of carpet; that, for some reason, she either wasn't watching where she was going, dragged her toe, or even possibly got up and her blood pressure dropped, like happens to all of us from time to time, you get up too quickly and you just faint."[4] [Id. at 20] Mr. Vanderbrook, in arriving at his conclusion that there were no "defective conditions which got in between her and where she was sitting and the place that she wound up," relies upon the testimony of one of defendant's employees and disregards the testimony of plaintiff's boyfriend's mother (with regard to plaintiff's path of travel and the location of her fall), both of whom appear to have been eyewitnesses to the accident. [*See e.g.* Doc. 85-8, pp. 1-2; Doc. 85-10, p. 20] Mr. Vanderbrook's opinion that she "dragged her toe" or "possibly got up and her blood pressure dropped" seems to have no basis in engineering, or medicine - Mr. Vanderbrook's not being a medical expert of any nature.

The Court finds defendants have failed to carry their burden to show this particular testimony is admissible under the Federal Rules of Evidence. "To establish reliability under *Daubert*, an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology.'"

---

[4] Mr. Vanderbrook was repeatedly invited at his deposition to explain the methodology he employed in arriving at his conclusions in this matter. In addition to the response noted above, Mr. Vanderbrook provides responses such as, "My expertise in reviewing, analyzing, something like 800 trip- or slip-type accidents over the last 30 years"; "as a mechanical engineer, I'm familiar with the laws of physics and the way that accidents occur and which – the direction of a person's momentum which causes them to trip and/or slip, and also my experience with this engineering background over the last 30 – probably 33 years"; although he conducted no physics calculations or any other calculations in this case, his "understanding of momentum and motion allows [him] to determine where people are going to wind up after they have a certain type of accident; his analysis is "all based on 40-something years of engineering experience and 32 years of forensics experience"; when he analyzes a trip-and-fall case, he does not necessarily write down the calculations that he has done "mentally," nor are calculations necessary "to analyze every situation." [Doc. 85-10, pp. 11, 12, 22; *see also id.* at pp.13, 15, 16]

*Brown*, 705 F.3d at 536 (quoting *Moore*, 151 F.3d at 276)(alterations in original). "'The expert's assurances that he has utilized generally accepted [principles] is insufficient.'" *Id.* (quoting *Moore* at 276)(alterations in original). With regard to Mr. Vanderbrook's conclusion that the "accident almost certainly resulted from the failure of Ms. Borill to properly assess her path of travel," Mr. Vanderbrook has failed to articulate any methodology of any nature, utilized in arriving at that conclusion, other than his examination of two undated photographs of the store (which may or may not accurately depict the condition of the entry area at the time of plaintiff's fall), his acceptance of one witness's testimony over another as to plaintiff's path of travel and the location of her fall, and his overall "expertise." The Court finds this testimony does not meet the necessary legal threshold for admissibility, however, perhaps more damning, Mr. Vanderbrook's proposed testimony, the challenged testimony, will not help the trier of fact understand the evidence or determine a fact in issue. It will be *for the jury to determine* credibility of witnesses and whether plaintiff took the path of travel she alleges, and if so, whether a loose glue strip or molding at the entrance of the store caused or contributed her to fall. *See e.g. Faircloth v. Lamb-Grays Harbor Co.*, 467 F.2d 685, 694 (5th Cir. 1972)(expert testimony should not be admitted on matters within the common knowledge of jurors.) The jury can hear the testimony of the witnesses, view the evidence and come to their own conclusions as to credibility and disputed facts. Furthermore, expert testimony lacking scientific grounding or accepted methodology is not necessary, nor is it proper, to resolve conflicting statements of various witnesses to an accident, here as to plaintiff's path of travel.

With regard to Mr. Vanderbrook's remaining conclusions (*i.e.*, that "toe dragging" or a "drop in blood pressure" was the cause of the accident), no information has been provided to this Court that Mr. Vanderbrook is qualified to testify on any such subject(s). When asked about his qualifications to testify in this area at his deposition, Mr. Vanderbrook provided responses such as: it was obvious

6

from his examination of Ms. Borill's flip-flops that she was a "toe-dragger," because the front of her right flip-flop was worn on the top edge; he had not conducted any studies in "toe-dragging" and is unaware of any such studies; he has no training regarding "toe-dragging" and "flip-flops" and his opinions are based on his "experience over the years . . . that flip-flops are one of the biggest shoe disasters to come along" in terms of people falling; he did not review any studies or literature of any kind regarding "toe-dragging" or "flip-flops;" even though he has no training with regard to shoes, his opinion suggests his engineering background enables him to examine shoes and "see things" that the average juror cannot, such as evidence of "toe-dragging." [Doc. 85-10, pp. 14, 20, 21] This Court finds defendants have put forth no evidence which would show Mr. Vanderbrook is qualified by his knowledge, skill, experience, training, or education to provide expert testimony on these topics. Fed. R. Evid. 702. Defendants have presented no evidence Mr. Vanderbrook has the necessary medical training and background in kinesiology to determine if plaintiff's blood pressure "dropped" and, if so, if such a drop could have precipitated plaintiff's fall or whether she had a unique gait which might have contributed to her alleged fall – such rank speculation, factually and medically is beyond Mr. Vanderbrook's expertise and is just that – rank speculation.

In light of the foregoing, plaintiff's motion in limine [Doc. 85] is GRANTED to the extent it seeks to exclude Fred Vanderbrook from testifying as to conclusion number 6 in his original report, and conclusions numbered 2 - 6 in his supplemental report.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___29___ day of May, 2013.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE